May it please the Court, Rachel Jensen representing the petitioner Mr. Wang. I'll aim to reserve three minutes for rebuttal. At the age of 21, Mr. Wang was arrested for attending Christian house church services. He was detained for several days, beaten, and deprived of food and water. When he was released, it was on the condition that he confess to participating in a dangerous cult, abandon his Christian faith, and submit to monitoring of him and his family. Mr. Wang sought refuge in the United States, but his claim was denied. The agency determined that Mr. Wang lacked credibility based on four purported inconsistencies, and I'll take them one at a time. First, I'd like to begin with the purported inconsistency regarding Mr. Wang's graduation date. First, Mr. Wang was consistent regarding all of the facts and events relating to his completion of his studies at Sim. He testified that he took his exams in January 2011, that he left his school in February 2011. So, counsel, we're familiar with the record and the facts, and I understand there are four bases that the IJ relied upon for the adverse credibility determination that you challenge, and you've just heard the discussion in the other case that there is no single factor rule, but there's also no number of bases that are required. I think I'm inclined to agree with you that some of these bases are stronger than others, or perhaps you would phrase it the opposite, some are weaker than others, but it seems to me what you want to do or are prepared to do is just run down them in a list, and I think what would be most helpful, my perspective at least, is if you take the ones that you think give you the most challenge and tell us why those are not sufficient, and I think the determination with respect to the bail notice and the fine receipt is troubling, and also the threats, whether there's three or five years or a range of three or five years for imprisonment. So could you focus on those and explain why those are not substantial evidence that supports the determination? Of course, Your Honor. So on the fine receipt, you're right, that would be very troubling if the agency were correct about Mr. Wang's testimony. Unfortunately, the agency's inconsistency finding is based on a couple of erroneous readings of the record, so I understand this is a very factually complicated issue, so I'm happy to field any questions as I explain it, but I'll just briefly explain Mr. Wang's actual testimony and then what the agency thought that he testified to. So his actual. I would say this. It's clear that the IG was wrong about the chain of custody issue, but the other issue of whether or not when the father or how the father received it does seem to be problematic. So I would exclude. We all, I think, would agree that the custody issue was wrong, but how he received it is troubling, and there doesn't seem to be a clear answer on that. So if you could clear that part. Absolutely, Your Honor. So Mr. Wang obtained the fine receipt that he submitted into evidence from his father. His father sent it to him in the mail. His father's letters in that intervening few years describe some difficulty in obtaining a copy from the police or locating his copy, but he was ultimately able to send it to Mr. Wang, and Mr. Wang testified, my father did not, you know, my parents didn't explain to me how they got it, but they sent it to me. Bad things were happening in China, and they didn't tell me everything. Didn't he say the father also received it when he paid the fine? That's correct, Your Honor. So how is that consistent? So as the IJ actually stated, it is possible that Mr. Wang's father, and this is indeed what happened, that Mr. Wang's father obtained the fine receipt directly from the police when he paid the bail. So this is a bail receipt. So when he paid the bail, he obtained the fine receipt. In the years between that event and Mr. Wang's asylum hearing, his father described in his letter a difficulty in locating it or obtaining another copy from the police, but he ultimately was able to obtain a copy, and Mr. Wang was not inconsistent. He didn't make up a story about how his dad got this copy. He said, I don't know. My parents were able to send it to me, and they didn't tell me how they were able to get it. In finding an inconsistency, the agency actually relied not just on the chain of custody question but also on its finding that Mr. Wang initially testified that he obtained the copy from the police. The IJ stated, you conveyed to this court that you obtained the copy from the police, and then your story evolved into being that your father got it. Given the fact that at least part of the agency's reasoning here relies on that factual error, it's not a great basis for an adverse credibility determination. It's certainly not supported by substantial evidence. And in any event, even on the alternate reading that the government proposes in its briefing, and the one that you and I were just discussing, that is the one basis the agency actually said was possible. The IJ explicitly said it was possible Mr. Wang's father got it and lost it and was able to send it again. It's a plausible explanation, but they don't have to accept it, though. That's the problem, right? That's correct, Your Honor, but if the agency were rejecting that explanation, it would, of course, be required to specifically and cogently say so. And the following sentence in the IJ's opinion just states that the testimony conflicts with the letters but doesn't explain why. So if that were the agency's finding, it would just need to say that. So on the three- to five-year threat issue, so I know that you have an explanation that there's two separate threats, and one was for three years, one's for five years, but none of that explains his responses to his lawyer while saying, wasn't the threat actually a range from three to five years? Can you explain that part? Sure, Your Honor. So we do explain in our briefing why this was an inconsistent, that the threats he received ranged from three to five years, but even without that, even absent the finding of an inconsistency, the agency is independently required to reference all relevant record evidence, not just in finding an inconsistency, but in determining the significance of that inconsistency, what it says about the applicant's credibility. And there's no question that the existence of the three-year threat in the asylum statement is relevant to that question here. It sheds light on some of the confusion before the IJ, and it specifically undermines the IJ's conclusion that Mr. Wang would have agreed to any description of the threat the government described. One year, seven years, ten years, those are the three examples the IJ provided, and that's plainly undermined by the existence of the three-year threat. The IJ was required to reference and specifically and cogently explain how his adverse credibility determination was supported by the substantial evidence and not to just... I guess, didn't he say to the lawyer, his lawyer asked him, well, wasn't actually the threat a range of three to five years? So how, that's inconsistent with either being a three-year or a five-year, and he said all three. So, Your Honor, it is a fair reading of Mr. Wang's testimony that he was testifying that he received threats that ranged from three to five years. It is understandable that the IJ did not accept that version and found him nonetheless inconsistent on that, but the point we're making is slightly different, and that's even absent the... So once you find an inconsistency, you have to then reference all of the relevant record evidence that would undermine your finding, not just of the inconsistency, but in the effect that inconsistency has on a person's credibility. So whether the inconsistency necessarily speaks to veracity, for example. So assuming he was inconsistent on the years of threat, why should we not find that substantial evidence to support adverse credibility? Because the Real ID Act requires that the agency account for all relevant record evidence. That's part of the totality. I just don't understand what that means, though. What do you mean? So the existence of the three-year threat in the asylum statement explains how this testimony got confused, the confusion before the IJ, and also undermines the IJ's conclusion that Mr. Wang would have agreed with any number the government had thrown out. By not having the benefit of knowing that the asylum statement describes also a threat for three years as well as a threat for five years, the agency's opinion could not take account of the totality of the circumstances. It couldn't be based on all of the relevant record evidence. Is this a version of not giving a cogent reason for discounting someone's plausible explanation? Is that what you're getting at with this? No, Your Honor. I think it's slightly different. So there is the requirement that the agency specifically and cogently explain all of its reasoning. But separate and apart from that, there's a requirement that the agency consider relevant record evidence that tends to undermine its conclusion. And that is present in, so for example, Shrestha V. Holder states this requirement, that the agency must account for all of the relevant record evidence. And there's no question that this is— I still don't understand. I'm not following. So what did the agency not properly reference? Sure, Your Honor. So the asylum statement includes a three-year threat and a five-year threat. So when the agency, or when the government's lawyer, asked Mr. Wang and Cross whether he was threatened for three years in prison, and Mr. Wang said yes. So part of the confusion about the three-year or five-year arranged to three to five year, part of that confusion is made clearer by the fact that he actually was threatened for three years in prison. And it explains not only the source of the government's mistake, but also why Mr. Wang would agree to that in the first place. And in any event, even if the agency weren't— Well, isn't that kind of a circular argument? Because the whole point is that the IJ found him not credible. So then you're saying the fact that he said in the statement proves that it did happen. Isn't that circular? I mean, something has to be proven true first. And presumably, if the IJ finds the testimony not credible, then the asylum statement is also not credible. So what's the proof of the three years? Sure, Your Honor. So the inconsistency finding is separate from the significance of— So this Court's recognized that a number of inconsistencies don't necessarily speak to credibility. So finding an inconsistency is just step one. The agency is also then required to say, what does this inconsistency actually say about the applicant's veracity? Does it affect his credibility at all? And in making that determination, the agency is required to reference all relevant record evidence. The asylum statement is relevant record evidence because it does include a threat for three years. The IJ's conclusion that Mr. Wang would have said yes to any number thrown out is undermined by the existence of the three-year threat. So the agency was required to account for that in the totality of the circumstances review. So you're almost out of time, and you wanted to reserve some time. Do you want to reserve the remainder? That would be great. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Roberta Roberts, on behalf of the United States Attorney General. The Court should deny this petition for review because substantial evidence supports the adverse credibility determination, and record evidence does not compel a contrary finding. To follow up on the discussion with my colleague, this discrepancy between whether he was threatened for three years versus five years does, in fact, go to his veracity in the credibility determination. For example, this is but another instance where, in the face of an inconsistency, the petitioner then testifies to more inconsistencies. Here's what happened with this instance of the three years versus five years. Now, when DHS first said five years and then switched it to three years, the petitioner seems to have just went along with whatever the person questioning him says. DHS says, oh, the threat was for five years. Yeah, oh, the threat was for three years. Oh, well, why is there a difference now? I don't really remember if it was three years or five years. Petitioner does specifically say in the record he does not remember if it was three years or five years. Then, in light of this obvious inconsistency, petitioner's attorney attempts to rehabilitate him on redirect by saying, well, isn't it a range of three to five years? To that, petitioner, although he had just previously said he doesn't remember if it was three or five years, he now agrees with yet another person and says, yes, it was a range of three to five years. May I ask, counsel, there's evidence in the record that he was threatened with three years, and there's evidence in the record that he was threatened with five years. So if you're at a hearing and you're saying, I don't remember, why is that an inconsistency? You may not remember, but there's a factual predicate to having been threatened for three years or five years. I mean, both, rather. There is a difference between the three-year and the five-year threat. DHS had asked petitioner about what he was threatened with by police, which is where the five years comes from. The three-year threat in the asylum statement is what petitioner's parents told him police told them. So there is a difference between the five-year threat and the three-year threat. Now, petitioner did not testify to specifically what police, what he says police told him. Additionally, it now seems that he is just trying to rehabilitate himself after seeing these inconsistencies by now agreeing to it was a range of three to five when it was not a range. It was three or five years, and there are differences between the three-year threat and the five-year threat. But how would you respond to Ms. Jensen's point that under SHREFRA that the agency is required to account for contrary evidence to the record and really explain it away in determining why it's continuing with an adverse credibility finding? Your Honor, the agency actually did do that here. In the board's decision, on the first page of the board's decision, they explicitly mentioned that respondent offers an additional explanation for this discrepancy, noting that his declaration says three years at one point and five years at another. So the agency in the board decision did indeed look to the record evidence that petitioner mentions about there being mentions of both a threat of three years of imprisonment and five years of imprisonment. And the agency, having considered this record evidence and included it in its assessment, came out to say that this explanation still does not explain why petitioner testified the way that he did. And it does not because, as stated, there is a difference between a range of three to five, which is what his attorney made up to try to rehabilitate him on redirect, versus either it was for three years or it was for five years, or both even. If we were to conclude that there's substantial evidence for maybe a couple of these things with the date of the graduation and his attendance at the church in Honolulu, but there's not a firm basis to support the imprisonment threat or the bail-fine-receipt issue, what do we do with that? Under Alam and Kumar, as Judge Beatty pointed out, there's no magic number here. If certain adverse credibility findings are unsound, how do we evaluate whether this should be sent back to the agency to reconsider under its retaliatory circumstances or not? What do we do with this? Yes, Your Honor. In this case, what you would do is you would determine if substantial evidence supports the remaining grounds that you decide to uphold, which is what the court did in Lee v. Garland. In Lee v. Garland, two out of the four grounds were rejected, but two of them were upheld, and the court said even with two grounds rejected, these two remaining grounds are still strong enough and still supported by substantial evidence to support this adverse credibility finding, which is what the court can do here as well. But in Kumar, a different case where there were a number of— I think it was like three out of four. I forget exactly what the details were. In one of those cases, there were a number of findings that were not supported by the rec or based on untenable grounds, and there we said we should send it back because it's up to the agency to decide under a totality of the circumstances whether it would still find or make an adverse credibility determination. So is there—I guess you would say we follow Lee in this case and not Kumar. And there is a difference between Lee and Kumar. In Kumar, the court—I believe the exact language was that by rejecting the other grounds, it all but gutted the adverse credibility determination, and so that's the difference there. In Kumar, it turned out that because these other grounds were rejected, what was left was not strong. What was left was shaky. It didn't have a leg to stand on. It was gutted. But in Lee, even with what was rejected, what was left was still strong. What was left was still supported by substantial evidence. And so that is what the court would look at here. If even the court did decide to reject a ground or so, are the remaining grounds strong enough to be supported by substantial evidence to uphold the adverse credibility determination? And, of course, the respondent would argue that it is. Can I ask, do you think the graduation date credibility finding is a strong one? He did seem to give three different dates, but there does seem to be an explanation for threading the needle on three different dates. What's your advice on that? What would you argue on that? Your Honor, for that instance, the immigration judge did consider that the reasoning or the explanation that petitioner provided was a reasonable explanation. You know, it's up to the school to do what they do with their administrative tasks. But part of the key here with that is that it is an example of how, in the face of an inconsistency, more inconsistencies arise. Because sometimes it's not just the substance of what is testified, but also how it is presented. And so here, in this case, in the face of, hey, this is a very big red flag that you claim to have been released from detention on April 29th, but you were also conferred a degree on the same date, that's a huge inconsistency. And in the face of that, the petitioner's testimony changes three times when asked, well, when did you graduate? It was in February, January, mid-January, February 4th. And so now the immigration judge is even less confident than he was before he asked the question because he asked seeking clarity and instead received even more confusion with these various dates that were given that now lead to even more inconsistencies. Would you make the same argument with respect to his attendance at church after he was in Hawaii? Yes, Your Honor. That also is an example of this pattern of, in the face of inconsistencies, testifying in a way that leads to even more inconsistencies, which affects the credibility determination. And that's why in the totality of the circumstances, the adverse credibility determination is supported by substantial evidence for the reasons that I have stated. And I see I am running low on time, Your Honor, so if there are no further questions for me, the respondent would request that the petition for review is denied. Thank you. Thank you. Ms. Jensen, we'll give you two minutes. I'm sorry to cut you off right before you start, but can you focus on the Catt claim? What evidence is there in the record that he would be subjected to torture with the acquiescence of the government if he were to return to China? Sure, Your Honor. So there is country conditions reports that show some of the goings-on in China with regards to people who attend Christian house church services. Mr. Wang has demonstrated that he is a practicing Christian and is at risk for that. But I will just say the BIA didn't consider his Catt claim here because of the adverse credibility determination, and so this court should instruct the BIA to consider that in the first instance on remand. There are three points I'd like to make very quickly. First, I just want to note that the government in its briefing, and we agree, stated that the BIA read Mr. Wang's asylum statement as being internally inconsistent as to whether he received a threat for three years or a threat for five years, and so the BIA actually didn't have the benefit of that record evidence on that point. But more importantly, I want to very quickly address the graduation date and the church attendance purported inconsistencies. So first, as we explained in the briefing, Mr. Wang wasn't inconsistent on either of these points, but more importantly, to the extent he was inconsistent as to which of these dates represented his graduation date or represented when he began attending his church, he provided explanations for the dates that he gave to the IJ. The IJ did not address the exam explanation. He provided the explanation that he took his exams in January and left school in February. I mean, the government makes a good point. It's not just the fact that he gives these different answers. It's just how those answers come out, right? He gives one date that says there's a contradiction. Well, then there's another explanation. Then he gives another date. Well, then he gives an explanation for that. Even though it is possible, I think, to thread the needle of all these dates and make them all accurate, it does seem very suspicious that there's a date backpedaling, another date more backpedaling. Why doesn't that support adverse credibility? Perhaps it would, Your Honor, if it were a demeanor finding or a different kind of finding. Unfortunately, the IJ stated he was inconsistent. He provided reasonable explanations. At least for the graduation date, the IJ didn't mention the exam explanation at all. He, of course, accepted the explanation on the critical point regarding the date on the graduation certificate. For the church dates, the agency just merely stated that he explained that he started attending regularly at some point, and that's why the variance in the dates. But it never then rejected that explanation, certainly not specifically and cogently. Finally, I'd just like to say that because the agency relied on all four of these bases, the BIA rested on all four of these findings of an inconsistency, there's no way to know which of these was most important to the BIA. Although we certainly argue that the court should grant the petition and remand with an instruction to find him credible, at minimum, the court should grant the petition and remand for a fresh consideration without the errors we've identified. All right. Thank you. Thank you both for your arguments this morning. This case is taken under submission, and we are in recess for the rest of the day. All rise.
judges: BADE, BUMATAY, SANCHEZ